# IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

GARY SNOW, Special Administrator, )
of the Estate of Kory Wilson, Deceased; )
KRISTLE JIMENEZ, mother and Next )
Friend of BDJ-W, a minor, )
 )
              Plaintiffs, )
vs. )    NO. CIV-14-911-HE
 )
BOARD OF COUNTY )
COMMISSIONERS OF THE COUNTY )
OF MCCLAIN, *et al.*, )
 )
             Defendants. )

## **ORDER**

This case arises out of the death of Kory Wilson while he was in defendants' custody at the McClain County, Oklahoma, jail. According to the complaint, Mr. Wilson was facing criminal charges and was taken into custody on June 16, 2013. He was allegedly a Type I insulin dependent diabetic. The complaint alleges generally that Mr. Wilson did not receive insulin or other treatment for his diabetes for a period of several days, resulting in his death on June 21, 2013.

Plaintiffs are Gary Snow, as the Special Administrator of Mr. Wilson's estate, and Kristle Jimenez, as mother and next friend of BDJ-W, the minor son of Mr. Wilson. Plaintiffs assert claims against McClain County and its Board of County Commissioners, the Sheriff and Undersheriff of McClain County, various detention officers having jail responsibilities, and John/Jane Doe defendants responsible for providing medical care to Wilson. Plaintiffs assert federal claims under 42 U.S.C. § 1983 based on Wilson's Fourteenth

Amendment due process rights (as a pretrial detainee) to appropriate medical care. They also assert state law claims for wrongful death, negligence and intentional infliction of emotional distress, as well as claims based on provisions of the Oklahoma Constitution.

Four motions to dismiss are pending, one filed by the McClain County Board of County Commissioners, another by the individual commissioners, another by the sheriff and most of the detention officers, and a fourth by detention officer Wayne Barnes. All seek the dismissal of plaintiffs' claims on the basis of Fed.R.Civ.P. 12(b)(6).

When considering whether a plaintiff's claims should be dismissed under Fed.R.Civ.P. 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving party. S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint must, though, contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 555 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Shields, 744 F.3d at 640 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). As explained by the Tenth Circuit, the Twombly/Iqbal pleading standard "is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Id.* at

2

640-41 (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir.2012)). Considering defendants' motions under that standard, the court concludes the motions should be granted in substantial part.

Motion of the Board of County Commissioners

At the outset, it is useful to address the exact status of the Board of County Commissioners of McClain County, and of McClain County itself, relative to the claims asserted here.[1] The complaint alleges that McClain County is a political subdivision of the State of Oklahoma, an assertion which is plainly true. 19 Okla. Stat. § 1 (county is a "body corporate and politic"). It also alleges, *see* Doc. #1, ¶4, that the Board of County Commissioners of McClain County is a political subdivision of the State of Oklahoma, which is not accurate. Under Oklahoma law, a county's board of county commissioners is not a separate legal entity from the county. Rather, in general, it exercises the powers of the county. 19 Okla. Stat. § 3. A suit brought against a county's board of county commissioners is the way Oklahoma law contemplates suing the county. 19 Okla. Stat. § 4. Moreover, in the § 1983 context, a suit against the board of county commissioners or some other county official in their official capacity is, in substance, a suit against the county. Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2008); Lopez v. LeMaster, 172 F.3d 756, 762 (10th Cir. 1999). So the question raised by the Board and commissioners' motions is whether plaintiffs

---

[1]*Confusion over the status of the Board of County Commissioners seems to be a staple of recent § 1983 litigation involving Oklahoma counties. For a useful and, in this court's view, accurate description of the legal landscape on the issue, see DuBois v. Bd. of Cnty. Comm'rs of Mayes Cnty. Okla., 2014 WL 4810332 (N.D.Okla. Sept. 29, 2014).*

have stated a claim against McClain County (i.e. any claims asserted against the county directly or by suing the board or other county officers in their official capacities) or against the members of the board of commissioners in their individual capacities.

The motion filed by the Board of County Commissioners confuses the issue by arguing that it (the Board) is not a "proper party," essentially because it didn't do anything wrong, or fail to do anything it had a duty to do. But, as noted above, the Board, as such, is not even a legal entity and obviously cannot be a "party" regardless of what it did or didn't do. Rather, the question is whether a basis for claim against the county is stated. In order to hold a county liable on a § 1983 claim, a plaintiff must show (1) the existence of a county policy or custom by which the plaintiff was denied a constitutional right, and (2) that the policy or custom was the moving force behind the constitutional deprivation (i.e. that there "is a direct causal link between the policy or custom and the injury alleged." *See* Canton v. Harris, 489 U.S. 378, 385 (1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).[2]

A board of county commissioners might well be the source of a pertinent policy in some circumstances,[3] but the question in this case has to do with responsibility for the provision of medical care in the county jail. Under Oklahoma law, the county sheriff is the

---

[2]*The indicated standard applies to municipalities and other political subdivisions, including counties.*

[3]*Plaintiffs suggest certain Oklahoma statutes impose duties on boards of county commissioners as to jail operation and/or medical services. It is doubtful that the statutes impose a duty on the Board such as might be an independent basis for county liability in the particular circumstances of this case. However, as a basis for county liability is otherwise pled, as discussed below, it is unnecessary to belabor the question here.*

4

final policymaker as to the county jail. 19 Okla. Stat. § 513; Lopez, 172 F.3d at 763 ("the county may be liable on the basis that [the sheriff] is a final policymaker with regard to its jail . . . ."). So if the sheriff has adopted a policy or knowingly acquiesced in a custom which becomes the moving force behind a constitutional violation, that is enough to establish county liability. Here, while the complaint's allegations are somewhat conclusory as to the policy/custom issue, the court concludes they are sufficient to allege a policy or custom sufficient to support county liability.

The constitutional right alleged to have been violated is an inmate's right to adequate medical care. As Mr. Wilson was a pretrial detainee, the basis for his claim is the Fourteenth Amendment's due process clause. Based on that amendment, he is entitled to the same level of protection against the denial of medical attention as a convicted inmate would be under the Eighth Amendment. Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009). The Eighth Amendment "imposes a duty on prison officials to provide humane conditions of confinement, including adequate ... medical care . . . ." Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008). Deliberate indifference to serious medical needs violates the constitutional requirement. *See* Estelle v. Gamble, 429 U.S. 97, 103-105 (1976). Here, the allegations of the complaint are sufficient to state a claim under the "deliberate indifference" standard.

As a result, the motion of the Board will be denied insofar as it proceeds on the theory that it (and hence the County) is not a "proper party." The County is a proper party and a Fourteenth Amendment claim has been stated against it.

The Board (i.e. McClain County) argues it is not liable as to plaintiff's state law claims

grounded in negligence (claims V, VI, and VIII) based on the Oklahoma Governmental Tort Claims Act, 51 Okla. Stat.151, *et seq*., and principles of sovereign immunity.[4] That Act generally adopts the doctrine of sovereign immunity from tort liability for the State, its political subdivisions, and their employees acting within the scope of their employment. 51 Okla. Stat. § 152.1. The immunity is waived in various circumstances, but not for liability stemming from the "equipping, operation or maintenance of any prison, jail or correctional facility ...." 51 Okla. Stat. § 155(25). That exemption from liability includes liability arising from the provision of medical and health services. Medina v. State, 871 P.2d 1379, 1384 (Okla. 1993). Plaintiffs' response concedes that their claims sounding in negligence are precluded by this provision of the Act and the sovereign immunity doctrine,[5] hence the County's motion will be granted as to claims V, VI, and VIII.[6] Count IV also will be

---

[4]*The County's argument appears to embrace the wrongful death claim as well, since Oklahoma's wrongful death statute, 12 Okla. Stat. § 1053, does not expand the nature of a plaintiff's claim but only clarifies who may bring a claim that the decedent could otherwise have brought himself. See* Berry v. City of Muskogee, *900 F.2d 1489, 1505 n.22 (10th Cir.1990) ("But, as is true in most states, Oklahoma views wrongful death actions as derivative claims that depend upon the existence of a right of action in the decedent before death.");* Economy Fire & Cas. Co. v. Faulkner, *790 F.Supp. 1082, 1084 (W.D.Okla.1991) ("The Wrongful Death Act does not expand the scope of claims or the number of persons entitled to bring an action, but merely entitles someone to bring what the decedent could have brought himself. "), aff'd, 951 F.2d 1258 (10th Cir. 1991);* White v. Equity Fire & Cas. Co., *823 P.2d 953 (Okla.Civ.App. 1991). Plaintiffs do not seriously challenge that conclusion.*

[5]*As all of plaintiffs' state law claims are within the scope of the correctional facility exemption, it is unnecessary to determine whether the discretionary function exemption of 51 Okla. Stat. § 155(5) would also apply or whether, as to the claim for intentional infliction of emotional distress, the good faith/bad faith distinction of § 153(A) is applicable.*

[6]*As plaintiffs correctly note, the Oklahoma Governmental Tort Claims Act does not bar or limit plaintiffs' § 1983 claims.*

dismissed. *See supra* note 4 and *infra* note 13.

The County also seeks dismissal of plaintiffs' claims under Art. II, § 9 and Art. II, §30 of the Oklahoma Constitution, arguing that Oklahoma does not recognize a private right of action for violations of either clause. Section 9 prohibits cruel and unusual punishment, paralleling the Eighth Amendment of the U. S. Constitution. Section 30 involves unreasonable searches or seizures. The Oklahoma Supreme Court recognized a private right of action against a governmental entity for excessive force based on Art. 2, § 30 of the Oklahoma Constitution, notwithstanding the limitations of the Oklahoma Governmental Tort Claims Act, in Bosh v. Cherokee Cnty. Bldg. Auth., 305 P.3d 994 (Okla. 2013). Plaintiffs provide no authority supporting the idea that Oklahoma would recognize a private right of action under Section 9, other than suggesting the Bosh rationale should be extended to it. In effect, plaintiffs argue that Bosh should be generally extended to other circumstances and constitutional provisions. The court recognizes that some courts have suggested Oklahoma may not limit the Bosh rationale to excessive force claims. However, consistent with the reluctance of federal courts to expand state law without clear guidance and for the reasons previously stated by this court, the court declines to assume such an expansion of state law. *See* Schrock v. Wyeth, Inc., 727 F.3d 1273, 1284 (10th Cir. 2013); Hedger v. Kramer, No. CIV-13-654-HE (W.D.Okla. April 24, 2014) (interim Order); Koch v. Juber, No. CIV-13-0750-HE (W.D.Okla. May 23, 2014 (interim Order). The purported claims based on alleged violations of the Oklahoma Constitution will be dismissed.

The Board's motion also seeks the dismissal of any claims asserted by Kristle Jimenez,

7

arguing that she lacks standing to assert a § 1983 claim based on injuries to Mr. Wilson and that she is not the surviving spouse or next of kin as to any state claim. Plaintiffs concede the point, indicating that Ms. Jimenez appears here only as mother and next friend of Mr. Wilson's minor son. The Board does not appear to challenge Ms. Jimenez's status insofar as she seeks to act only on behalf of the minor. However, the only remaining claim against the Board is that asserted against it under § 1983. Because a § 1983 civil rights action is personal, Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir. 1990) ("We must also keep firmly in mind the well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else."), the proper remedy is "a survival action, brought by the estate of the deceased victim, in accord with §1983's express statement that the liability is 'to the party injured.'" Berry v. City of Muskogee, 900 F.2d 1489, 1506-07 (10th Cir.1990) (quoting 42 U.S.C. § 1983)).[7] Therefore, all claims asserted by Ms. Jimenez against the Board will be dismissed.

For the reasons indicated, the Board's (i.e. the County's) motion to dismiss will be granted as to all claims other than Mr. Snow's' § 1983 claim in Count III, based on deliberate indifference to serious medical needs.

<u>Motion of the Individual Commissioners</u>

Defendants Benny McGowen, Wilson Lyles and Charles Foster are the members of the Board of County Commissioners of McClain County. Plaintiffs have sued these

---

[7] *Plaintiffs admit that defendants are correct that Ms. Jimenez should be dismissed "from the Section 1983 claims and the state wrongful death claims." Doc. #31, p. 3.*

defendants in their individual, as well as their official, capacities.

There is substantial overlap in the arguments of the individual commissioners and those of the Board discussed above. Insofar as these defendants are sued in their official capacities, the above discussion of the Board's motion is equally applicable. These defendants raise substantially the same issues with respect to the claims of Kristle Jimenez, the application of sovereign immunity to plaintiffs' state law negligence and wrongful death claims, and the availability of a private right of action for alleged violations of the Oklahoma Constitution. The court applies the same treatment of those issues to these defendants and the referenced claims asserted against the Board members will be dismissed for the same reasons.[8]

The Board's motion did not present the issue of the Board members' potential liability on the § 1983 claims in their individual capacities. To be individually liable under § 1983 a defendant must have "'subject[ed], or cause[d] to be subjected' a plaintiff to a deprivation of his legal rights." Porro, 624 F.3d at 1327 (quoting 42 U.S.C. § 1983). "[P]ersonal participation in the specific constitutional violation complained of is essential." Henry v. Storey, 658 F.3d 1235, 1241 (10th Cir. 2011).[9] A supervisor may be held liable under § 1983

---

[8] *The application of the Oklahoma Governmental Tort Claims Act is not identical for the individual defendants as for the county itself, but the complaint alleges nothing to suggest that the commissioners were acting outside the scope of their "employment" in whatever decisions they made. Plaintiffs explicitly concede that as to the intentional infliction of emotional distress claim. Absent a basis for concluding action outside the scope of employment, the subdivision employee or representative is generally immune from liability for state law tort claims. 51 Okla. Stat. § 152.1(A).*

[9] *"Deliberate indifference has objective and subjective components. Callahan v. Poppell, 471 F.3d 1155, 1159 (10th Cir. 2006). "The objective component of the test is met if the harm*

9

if he or she "established or utilized an unconstitutional policy or custom" or "breached a duty imposed by state or local law which caused the constitutional violation." Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir.1988).

Plaintiffs do not claim the Board members were directly involved in the asserted failure to provide Mr. Wilson with medical care. As defendants note, plaintiffs do not allege that the defendants "ever interacted with the Decedent, that they were aware of the Decedent's medical condition, or that they were even aware of the Decedent's existence or his incarceration in the Jail." Doc. #18, p. 16. What they do allege is that

> The Defendant BOARD and the individual County Commissioners, FOSTER, LYLES and McGOWEN, have control and charge of county property, including the McClain County Detention Center, and have certain statutory obligations and managerial and fiscal responsibilities with regard to the care and treatment of pretrial detainees and prisoners located in the McClain County Detention Center, which included responsibility for Kory Wilson. . . . These responsibilities include procuring and/or arranging medical treatment and diagnostic services for pretrial detainees and prisoners who reside in the McClain County Detention Center while in custody of Sheriff HEWETT.
>
> On multiple occasions on or before June 19, 2013, Commissioners FOSTER, LYLES and McGOWEN met with Defendant HEWETT and others to discuss dangerous conditions and overcrowding in the Detention Center.
>
> Defendants HEWETT, FOSTER, LYLES and McGOWEN failed to take appropriate actions to employ competent medical personnel at the Detention Center to evaluate incoming detainees and to tend to the medical needs of those that were in the custody of the McClain County Detention Center.
>
> Defendants . . . FOSTER, LYLES, McGOWEN, and all others named herein,

---

*suffered is sufficiently serious to implicate the Cruel and Unusual Punishment Clause," and the subjective component is met if the defendant knew the prisoner "faced a substantial risk of harm and disregarded that risk." Id. (internal quotations omitted)*

knew or should have known that the failure to act was likely to cause those under the custody and control of the Detention Center to become injured, ill or to be killed by the dangerous conditions and/or lack of appropriate medical personnel.

Doc. #1, ¶¶ 23, 26, 27, 29.

The problem with plaintiff's claims against the county commissioners, in a nutshell, is that under Oklahoma law "[t]he sheriff, and not the board, is responsible for medical care in Oklahoma [county jails]." Estate of Crowell ex rel. Boen v. Bd. of Cnty. Comm'rs of Cnty. of Cleveland, 237 P.3d 134, 142 (Okla. 2010).[10] County commissioners are required by state statute to inspect the jails in their respective counties yearly and to "fully examine the health, cleanliness and discipline conditions of the jail." 57 Okla. Stat. § 1.[11] That is not the same thing, though, as undertaking responsibility for ensuring that the medical needs of the prisoners and pretrial detainees are met. *See generally* Meade, 841 F.2d at 1531. Oklahoma law imposes that duty on the sheriff of each county. Section 52 of Title 57, Okla. Stat. provides that "[i]t shall be the duty of the sheriff of each county to provide bed clothing, washing, board and medical care when required, and all necessities for the comfort and welfare of prisoners as specified by the standards promulgated pursuant to Section 192 of

---

[10]*To the extent* Estate of Crowell *suggests that a board of county commissioners is not a proper defendant with respect to allegations against a county sheriff on civil rights claims arising out of incidents at a county jail, the court respectfully disagrees with the decision. See* DuBois, *2014 WL 4810332, at \*7.*

[11]*If it appears during the inspection "that any provisions of law have been violated or neglected they shall give notice to the district attorney of the county." 57 Okla. Stat. § 1. There is no allegation that defendants McGowen, Foster, and Lyles inspected the McClain County Detention Center while Mr. Wilson was in custody there.*

Title 74 of the Oklahoma Statutes . . . ." *See* 57 Okla. Stat. § 47 ("The sheriff, or such person designated by law in his place, shall have charge of the county jail of his county and of all persons by law confined therein . . . ."); 19 Okla. Stat. § 513 ("The sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same . . . .").

County commissioners do "have power to appoint a medical officer to the jail and pay him such salary as they may think reasonable and proper, which shall be drawn out of the county treasury." 57 Okla. Stat. § 51. However, they are not required to make the appointment. Whether the county commissioners may take on the responsibility of providing medical care for prisoners or pretrial detainees at the county jail by appointing a medical officer is not an issue here, as no appointment was made. Further, to the extent plaintiffs attempt to base their claim on the commissioner's failure to make an appointment due to budgetary concerns, the claim fails for lack of sufficient factual allegations. Merely stating that defendants "[e]ngaged in a long-term and ongoing custom and practice of disregarding the medical needs of detainees, including Kory Wilson, in whole or in part because of the adverse effect on the Detention Center's budget," Doc. #1, ¶ 69(t), is not enough to "nudge[] [plaintiffs'] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Conclusory allegations of wrongdoing without some factual support are not sufficient. In addition, such a claim, if adequately pleaded, may be subject, as defendants argue, to legislative immunity.

Plaintiffs have failed to allege a duty either imposed by law or undertaken by the Board members, pursuant to 57 Okla. Stat. § 51, for the medical care of those imprisoned or

12

detained at the McClain County Detention Center. They also have not alleged that the Board members were personally involved in the medical care of the decedent. Plaintiffs therefore have not stated a § 1983 claim against the Board members in their individual capacities for deliberate indifference to the serious medical needs of the decedent. That claim, too, will be dismissed.[12]

Motion of defendants Hewett, Shobe, Thomas, and White

Defendants Don Hewett, Sheriff of McClain County, Bill Shobe, Undersheriff of McClain County, Sgt. Chia Thomas and Sgt. Jerry White have filed a partial motion to dismiss. These defendants all seek the dismissal of Counts V through IX. Defendants Shobe, Thomas and White also seek the dismissal of Count III. All four defendants raise substantially the same issues with respect to the claims of Kristle Jimenez, the application of sovereign immunity to plaintiffs' state law negligence and wrongful death claims, and the availability of a private right of action for alleged violations of the Oklahoma Constitution as did the Board and individual Board members. Applying the same analysis to plaintiffs' claims against defendants Hewett, Shobe, Thomas and White, the claims asserted in Counts IV,[13] V, VI,[14] VII, VIII, IX will be dismissed, as will the claims of Kristle Jimenez for the

---

[12]*Having reached this conclusion, it is unnecessary to address the Board members' qualified immunity argument.*

[13]*These defendants did not move for the dismissal of Count IV, but refer to it in their answers as both a State Law Wrongful Death Claim and "Estate and Survival Actions." E.g., Doc. Nos.21, p. 9; 22, p. 9. However, as discussed earlier, supra note 4, Oklahoma's wrongful death statute does not create a new cause of action. Plaintiffs' wrongful death claim cannot remain viable once their underlying negligence claims are gone. Their remedy under § 1983, if they prevail, will be in the form of "a survival action, brought by the estate of the deceased victim, in accord with § 1983's*

13

reasons stated earlier.

Defendants Shobe, Thomas and White, but not Hewett, seek the dismissal of plaintiffs' § 1983 claims asserted against them in their official capacity for failure to train and supervise and provide adequate medical care in Count III.[15] They contend that it is the sheriff who has final policy-making authority regarding the provision of medical care to county inmates under Oklahoma law. They claim plaintiffs did not allege that the Sheriff delegated policy-making authority to them or that they "practiced any such *de facto* final policy-making authority relative to Plaintiffs' claims herein." Doc. #19, p. 13. While they acknowledge that plaintiffs assert that defendant Shobe "did perform . . . policy making function in the McClain County Detention Center," Doc. #1, p. 5, ¶9, they maintain that such a conclusory allegation without factual support is insufficient. The court agrees.

By suing these individuals in their official capacities, plaintiffs essentially are attempting to base County liability on their actions. That is permissible only if they are authorized policy makers for the County. *See* Beedle v. Wilson, 422 F.3d 1059, 1068 (10th Cir. 2005) ("[m]unicipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered.") (internal

---

*express statement that the liability is to the party injured."* Berry, *900 F.2d at 1506-07 (internal quotations omitted). The court will therefore sua sponte dismiss Count IV also against defendants Shobe, Thomas and White and Hewett.*

[14]*Count VI is only asserted against defendant Hewett and the Board.*

[15]*The claim alleged in Count III is asserted against defendants McGowen, Lyles, Foster, Hewett, Shobe, Barnes, Thomas, White and Does 1-99 in their official capacities only.*

14

quotations omitted).

Both parties acknowledge that defendant Hewett is a final policy maker for McClain County. Plaintiffs assert that "if he delegated the authority to Defendant Shobe or Barnes,[16] to make a policy that was unconstitutional, the official capacity claims against Shobe and Barnes and, thus the municipality, survive." Doc. #31, p. 6. While they admit that "Defendant Thomas and White's policymaking status is suspect," *id.*, they ask that their official capacity claims against Thomas and White, plus Shobe, not be dismissed "until discovery definitively reveals who the acting policy makers were in this case." *Id.* at 7. This the court cannot do in the absence of any allegations of a delegation of authority by Hewett to Shobe, Thomas, White or Barnes in the complaint. Allegations in their brief that "Defendant Shobe and/or Barnes were vested with or had been delegated sole and final policy making authority with respect to the policy at issue in this case; namely, the policy that no employee was allowed to call for emergency medical assistance without the prior approval of Defendant Barnes or Shobe,"" *id.* at 6, are not enough. Statements in a brief cannot fill in gaps in a complaint. The court can only consider what has been actually pleaded, not what a party later argues in a brief or hopes to uncover in discovery. As plaintiffs have not alleged a sufficient factual basis for defendants Shobe, Thomas and White to be considered policy makers for McClain County, the claims asserted against these three defendants in their official capacities in Count III will be dismissed. The motion to dismiss

---

[16]*Defendant Barnes filed a separate motion to dismiss, which is addressed subsequently.*

of defendants Hewett, Shobe, Thomas and White will be granted.

Motion of defendant Barnes

Defendant Barnes filed a partial motion to dismiss seeking the dismissal of plaintiff's state law claims on the grounds asserted by the other defendants, plus because he contends those claims are untimely. Applying the same analysis as before,[17] the court concludes his motion should be granted and Counts IV,V,VII-IX, as well as the claims of Kristle Jimenez should be dismissed. The court *sua sponte* dismisses the claims asserted against defendant Barnes in Count III of the complaint, as plaintiffs failed to sufficiently allege that he either was an official policy maker for the county or that such authority was delegated to him.

## Conclusion

The Board's motion to dismiss [Doc. #17] is **granted in part** and **denied in part**. It is **granted** as to all claims asserted against it other than plaintiffs' § 1983 claim based on deliberate indifference to serious medical needs (Count III). The individual Board members' motion to dismiss [Doc. #18] is **granted in part** and **denied in part**. It is **granted** as to all claims but Count III, which is asserted against them in their official capacities. The partial motion to dismiss filed by defendants Hewett, Shobe, Thomas and White [Doc. #19] is **granted**. As to all four defendants Counts IV,V,VII, VIII and IX will be **dismissed**. As to defendant Hewett, Count VI will be **dismissed**. Count III will be **dismissed** as to defendants Shobe, Thomas and White. The partial motion to dismiss filed by defendant Barnes [Doc.

---

[17]*The court finds it unnecessary to consider defendant's alternative limitations defense.*

16

#14] is **granted** and Counts IV,V,VII, VIII and IX will be dismissed as to him. The court *sua sponte* dismisses the claims asserted against defendant Barnes in Count III. All defendants' motions are **granted** as to the claims of Kristle Jimenez. Her claims, asserted both personally and as mother and next friend of BDJ-W, are **dismissed**.

The remaining claims consist of the claims asserted by Gary Snow as administrator of Mr. Wilson's estate and they are: (1) the claim asserted in Count I against defendants Hewett, Shobe, Barnes, Thomas, White and Does 1-99, (2) the claim asserted in Count II, and (3) the claim asserted in Count III against Hewett, Does 1-99 and against the Board and the individual Board members in their official capacities, i.e. the claim against McClain County.

**IT IS SO ORDERED**.

Dated this 19th day of December, 2014.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE